# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:13cv121

WILLIAM R. SCHERER and ANNE )
SCHERER, )
       )
      Plaintiffs, )
       )
v. )     **MEMORANDUM AND**
       )     **RECOMMENDATION**
STEEL CREEK PROPERTY OWNERS )
ASSOCIATION, PAUL IOOSSS AND )
STEPHEN IOOSSS, )
       )
      Defendants. )
_____ )

      Pending before the Court are Defendants' Motions to Dismiss [# 23, # 25 &

# 30]. Plaintiffs brought this action against Defendants asserting various claims

arising out of a dispute between a property owner and the neighborhood

association that governs the residential community where Plaintiffs' property is

located. Defendants move to dismiss the Amended Complaint on various

grounds.[1] The Court **RECOMMENDS** that the District Court **GRANT** the

Motion to Dismiss of Defendant Steven Iooss [# 30], **DENY** the Motion to

Dismiss of Defendant Paul Iooss [# 23], and **GRANT in part** and **DENY in part**

---

[1] Defendants also moved to strike the Amended Complaint in its entirety. Although each Defendant combined the legal briefing of the two motions into one brief, the Court has addressed the Motions to Strike in a separate Order.

the Motion to Dismiss of Defendant Steel Creek Property Owners Association.

## I.   Background

## A.   Plaintiffs Purchase Property in the Steel Creek Real Estate Development

Steel Creek Development ("Steel Creek") is a real estate development in Transylvania County, North Carolina.  (Pls.' Am. Compl. ¶ 8.)  Steel Creek consist of 58 total lots and encompasses 459 acres.  (Id. ¶¶ 19, 23.)    Only a small portion of these lots, however, have been improved; most of the land remains heavily forested.  (Id. ¶¶ 23, 25.)

Steel Creek is a planned community pursuant to the North Carolina Planned Community Act.  (Id. ¶ 9.)  Defendant Steel Creek Property Owners Association ("Steel Creek POA") is a North Carolina Nonprofit Corporation.  (Id. ¶ 10; Ex. 2 to Pls.' Am. Compl.)  Pursuant to the bylaws of Defendant Steel Creek POA, every owner of a lot or other parcel within Steel Creek is a member of Defendant Steel Creek POA.  (Ex. 3 to Pls.' Am. Compl. at Art. II.)

Plaintiffs are residents of Florida who maintain a second home in North Carolina.  (Pls.' Am. Compl. ¶¶ 1, 12.)  In 2000, Plaintiffs purchased two lots totaling 64.74 acres in Steel Creek.  (Id. ¶ 14.)   In 2001, Plaintiffs purchased an additional 6.15 acre lot in Steel Creek.  (Id. ¶ 15.)  Plaintiffs hoped to transform

their exiting property outside of Steel Creek, as well as the lots in Steel Creek, into a large mountain horse farm. (Id. ¶ 14.) Accordingly, Plaintiffs submitted plans to Defendant Steel Creek POA for construction of a family horse farm, which included clearing land to build barns, pastures for horses, horse trails, and roads to access the property. (Id. ¶ 15.) After Defendant Steel Creek POA approved the plans, Plaintiffs expended significant amounts of money creating pasture land on the 6.15 acre lot in Steel Creek. (Id. ¶¶ 16-17.)

Several years later, after conversations with Steel Creek's developer and a contractor, Plaintiffs purchased a fourth lot in Steel Creek in order to construct a barn. (Id. ¶¶13, 18.) This fourth lot was 10.02 acres and adjoined the third lot Plaintiff purchased in 2001. (Id. ¶ 18.) After the purchase of this fourth lot, Plaintiffs owned 80.91 out of the 459 total acres comprising Steel Creek. (Id. ¶ 19.) In addition to acquiring the property within Steel Creek, Plaintiffs worked with others to create the Rich Mountain Conservancy, a 200 acre tract of land bordering Steel Creek. (Id. ¶ 20.) The Rich Mountain Conservancy contains public equestrian and hiking trails. (Id. ¶ 20.)

**B.    Plaintiffs' History of Disputes with Other Members of the Steel Creek POA**

Plaintiffs allege that a small group of individuals owning lots at Steel Creek

oppose allowing Plaintiffs or others to use their property in a manner consistent with an equestrian community and have engaged in a campaign to prevent Plaintiffs from completing their horse farm in Steel Creek.  (Id. ¶¶ 23-26.)  For example, Plaintiffs allege that one or more property owners at Steel Creek repeatedly complained to the North Carolina Department of Environment and Natural Resources ("NCDENR") that Plaintiffs were illegally clearing their land as part of Plaintiffs' effort to build their horse farm.  (Id. ¶¶ 27-29.)  Similar complaints regarding the clearing of property were made to Defendant Steel Creek POA's president about a lot owned by relatives of Plaintiffs.  (Id. ¶¶ 31-33.)  These individuals also attempted – unsuccessfully - to amend the government documents of Defendant Steel Creek POA to restrict Plaintiffs' right to clear their land and complete the horse farm.  (Id.  ¶¶ 34-40.)

In 2008, Plaintiffs took steps to divide the four lots into sixteen separate lots.  (Id. ¶ 41.)  Although the Steel Creek POA Board reviewed Plaintiffs' plans and indicated to the Transylvania County Planning Department that the proposed subdivision complied with the Covenants of the Steel Creek POA (id. ¶ 43), individual members of the Steel Creek POA still opposed the subdivision (id. ¶ 44-47).   Despite this opposition, Transylvania County ultimately approved the subdivision of the lots.  (Id. ¶ 47.)  After the subdivision of the lots, the Steel Creek

POA Board continued assessing Plaintiffs as it had before the subdivision and provided Plaintiffs with four votes in Defendant Steel Creek POA. (Id. ¶ 51.)

In 2012, Plaintiffs began building a barn and equipment storage garage on the original lot number four. (Id. ¶ 52.) Plaintiffs provided the Steel Creek POA Board a simple drawing of the proposed buildings. (Id. ¶ 52.) Subsequently, Defendant Paul Iooss, the acting Chairman of the Steel Creek Architectural Control Committee ("Steel Creek ACC"), sent Plaintiffs a letter stating that the Steel Creek ACC would not approve the construction of the barn based on the information submitted by Plaintiffs. (Id. ¶ 54; Ex. 16 at p. 2 to Pls.' Am. Compl.) Despite receiving this letter, Plaintiffs continued construction of the buildings. (Pls.' Am. Compl. ¶ 55; Ex. 16 to Pls.' Am. Compl. at p. 1.) Plaintiffs contend that Defendant Paul Iooss then misled the North Carolina Department of Environment and Natural Resources Division of Land Quality into believing that he was a member of the Steel Creek POA Board and that Plaintiffs efforts to clear the land for the barn violated the Steel Creek POA Declaration. (Id. ¶ 57.) The NCDENR, however, found no violation for Plaintiffs clearing the barn site. (Id. ¶ 57.)

On December 13, 2012, Defendant Paul Iooss sent another letter to Plaintiffs stating that Plaintiffs were in violation of the Protective Covenants, and that the

Steel Creek POA Board decided to levy a fine of $50.00 per day commencing ten days from receipt of the notice until all the violations were remedied. (Id. ¶ 59; Ex. 16 to Pls.' Am. Compl. at p. 1.) Subsequently, on January 23, 2013, Defendant Paul Iooss sent Plaintiffs another letter stating that the Steel Creek POA Board could still not approve the barn project and requested that Plaintiffs submit in writing the necessary formal construction plans and specifications associated with the three lots. (Ex. 17 to Pls.' Am. Compl.; Pls.' Am. Compl. ¶ 62.) When Plaintiffs received this letter, construction of the barn and garage were already complete. (Pls.' Am. Compl. ¶ 63.)

Approximately three weeks later, Plaintiffs submitted additional drawings and a survey to the Steel Creek POA Board in an effort to comply with the request for additional documents related to the barn site. (Pls.' Am. Compl. ¶ 64; Ex. 18 to Pls.' Am. Compl.) On February 22, 2013, the Steel Creek POA Board rejected the additional drawings submitted by Plaintiffs and requested blueprints for the project. (Pls.' Am. Compl. ¶ 65.)

Meanwhile, on January 31, 2013, the Steel Creek POA Board also sent Plaintiffs a letter stating that they had not been paying their full share of the road maintenance fees since January of 2009. (Id. ¶ 68.) The Steel Creek POA Board demanded that Plaintiffs immediately pay $23,693.70 to cover the fee for prior

years.  (Id.)  This fee included an assessment of $8,293.70 in interest at an 18% interest rate.  (Id.)  According to Defendant Paul Iooss, Plaintiffs should have been assessed on the basis of sixteen lots, one improved and fifteen unimproved. Approximately two months later, Defendant Paul Iooss and the Steel Creek POA Board again demanded full payment of the retroactive maintenance fees plus interest.  (Id. ¶ 74.)  In addition, they threatened to file a lien against Plaintiffs' properties and assess Plaintiffs with attorney's fees if Plaintiffs did not pay the fees in fifteen days.  (Id. ¶ 74.)  Plaintiffs, however, contend that there is no basis for the Steel Creek POA Board to demand these additional assessments or to demand interest at a rate of 18%.  (Id. ¶¶ 69-73.)

The Steel Creek POA Board also sent Plaintiffs sixteen separate invoices for the 2013 annual assessments.  (Id. ¶ 75.)  The Steel Creek POA Board assessed Plaintiffs for four improved lots at $700 each and for twelve unimproved lots at $350 each for a total of $7,000.00.  (Id.)  Plaintiffs contend that this assessment is improper because Plaintiffs should only be charged for one improved lot; the remaining lots should all be assessed as unimproved lots.  (Id. ¶¶ 76-81.) Plaintiffs paid the 2013 assessment under protest.  (Id. ¶ 75.)

Despite being assessed for sixteen lots in 2013, Plaintiffs were only provided with fifteen votes for Defendant Steel Creek POA.  (Id. ¶ 83.)  Plaintiffs contend

that they were denied the full sixteen votes to allow the members of Defendant

Steel Creek POA who opposed Plaintiffs plans for developing a horse farm to

consolidate their control of the Steel Creek POA Board and prevent Plaintiffs from

implementing their plans.  (See e.g. id. ¶ 83.)

As part of its efforts to frustrate Plaintiffs plans for a horse farm, the Steel

Creek POA Board also proposed various changes to the Covenants.  (Id. ¶¶ 87-

96.)  Plaintiffs contend that many of the proposed changes are unlawful and

directed specifically at preventing them from further developing their property in

the manner they desire.  (Id. ¶¶ 87-96.)  Plaintiffs now contend that they have

suffered damages in excess of a $1million dollars stemming from the various

actions of the Steel Creek POA Board.  (Id. ¶ 99.)

In addition to the alleged damages Plaintiffs have suffered, Plaintiffs also

contend that the appointment of a receiver is necessary in this case.  (Id.  ¶¶ 100-

118.)  Plaintiff contends that the actions of the Steel Creek POA Board have

inflicted such extensive damage on the Steel Creek POA that it is near the point of

collapsing.  (Id. ¶ 100.)  Specifically, Plaintiffs contend that as a result of the Steel

Creek POA Board's mismanagement of Defendant Steel Creek POA, that the

organization is facing the potential of a multi-million dollar liability from the land

owners in the community.  (Id.)  Plaintiffs also allege that the Steel Creek POA

Board is violating the North Carolina Debt Collection Act, converting the funds of Steel Creek property owners by illegally collecting assessments in the face of impermissible surpluses, failing to adequately fulfill its duties to properly manage the roads in the community, and allowing Defendant Paul Iooss to serve as a member of the Steel Creek POA Board despite not owning property in Steel Creek since June of 2012.  (Id.  ¶¶ 100-02.)

### C.  The Claims Asserted in the Amended Complaint

As a result of the various actions taken by Defendants and the alleged damages stemming from these actions, Plaintiffs initiated this civil proceeding. The Amended Complaint asserts a total of nine claims against Defendants.  Count One asserts a claim for the appointment of a receiver pursuant to N.C. Gen. Stat. § 1-502(1) and the Court's inherent equitable powers.  (Id. ¶¶ 114-18.)  Count Two asserts a claim for violation of the North Carolina Debt Collection Act against Defendant Steel Creek POA.  (Id. ¶¶ 119-33.)  Count Three asserts a claim for Declaratory Judgment against Defendant Steel Creek POA.  (Id. ¶¶ 134-59.)  Count Four asserts a claim for unjust enrichment under North Carolina law against Defendant Steel Creek POA.  (Id. ¶¶ 160-70.)  Count Five asserts a claim for breach of covenant of quiet enjoyment under North Carolina law against Defendant Steel Creek POA.  (Id. ¶¶ 171-76.)  Count Six asserts a conversion claim under

North Carolina law against Defendant Steel Creek POA. (Id. ¶¶ 177-85.) Count Seven asserts a claim for equitable estoppel against Defendant Steel Creek POA. (Id. ¶¶ 186-92.) Count Eight asserts a claim against Defendant Paul Iooss for tortious interference with a contractual relationship. (Id. ¶¶ 193-99.) Finally, Count Nine asserts a claim against Defendant Steven Iooss for tortious interference with a contractual relationship. (Id. ¶¶ 200-07.) Defendants moved to dismiss the Amended Complaint on various grounds. Defendants' motions are now properly before the Court for a Memorandum and Recommendation to the District Court.

## II. Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering Defendants' motions, the Court accepts the allegations in the Amended Complaint as true and construes them in the light most favorable to Plaintiffs. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain

sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The Amended Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

## II.     Analysis

### A.     Plaintiffs' Tortious Interference Claim against Defendant Paul Iooss

Count Eight of the Amended Complaint asserts a tortious interference with a contractual relationship claim against Defendant Paul Iooss.  (Pls.' Am. Compl. ¶ 194.)   In order to assert a tortious interference with contract claim in North Carolina, a plaintiff must allege factual allegations supporting each of the tort's five elements: (1) the existence of a valid contract between the plaintiff and a third person that confers upon the plaintiff a contractual right against the third person; (2) that the defendant knew of the existence of the contract; (3) that the defendant intentionally induced the third person not to perform the contract; (4) there is no justification for defendant's actions in inducing the non-performance of the contract; and (5) plaintiff sustains actual damages as a result of defendant's actions.  United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 387 (N.C. 1988); Wagoner v. Elkin City Sch. Bd. of Educ., 440 S.E.2d 119, 587 (N.C. Ct. App. 1994); Lenzer v. Flaherty, 418 S.E.2d 276, 286 (N.C. Ct. App. 1992).  "Bad motive is the essence of a claim for tortious interference with contract."  Bloch v. Paul Revere Life Ins. Co., 547 S.E.2d 51, 59 (N.C. Ct. App. 2001).

Whether or not a defendant is justified in taking actions that interfere with a plaintiff's contractual right depends upon a variety of factors, including: the

surrounding circumstances, the defendant's motives and conduct, the interest

defendant sought to advance, the social interest in protecting the defendant's

freedom of action, and the contractual interest of the plaintiff.  Id.; Robinson,

Bradshaw & Hinson, P.A. v. Smith, 498 S.E.2d 841, 850 (N.C. Ct. App. 1998); see

also Simpson v. Amylin Pharma., Inc., Civil Case No. 1:11-cv-00301-MR-DLH,

2013 WL 5520006, at *11 (W.D.N.C. Oct. 3, 2013) (Reidinger, J.).   "A defendant

may be justified in interfering with a contract if he does so for a reason reasonably

related to a legitimate business interest."  Bloch, 547 S.E.2d at 60 (internal

quotations and citation omitted).

The Amended Complaint alleges that Defendant Steel Creek POA and

Plaintiffs are parties to contracts, including the Declarations, Protective Covenants,

and Bylaws of the Steel Creek POA.  (Pls.' Am. Compl. ¶ 195.)   At least as of

June 2012, it appears from the face of the Amended Complaint that Defendant Paul

Iooss was not a party to these contracts because he was no longer an owner of

property in Steel Creek.  (Id. ¶ 102). [2]  Defendant Paul Iooss knew of the existence

of the contracts between Plaintiffs and Defendant Steel Creek POA.  (Id. ¶ 196.)

Furthermore, the Amended Complaint alleges that Defendant Paul Iooss took

various actions intentionally aimed at inducing Defendant Steel Creek POA to not

---

2   The Court makes no determination as to whether Defendant Paul Ioos was a party to the contracts at issue prior to
this date by virtue of his membership in the Steel Creek POA because Defendant Paul Iooss has not raised this issue
in his Motion to Dismiss.

perform its obligations under the contracts and to breach its obligations under the specific terms of these contracts.  (Id. ¶ 197.)  Specifically, the Amended Complaint alleges that Defendant Paul Iooss intentionally induced Defendant Steel Creek POA not to comply with the terms of the contracts by serving on the Steel Creek POA Board despite not owning property in Steel Creek and, thus, not being legally entitled to hold the position and by using his position on the Steel Creek POA Board to ensure that the Steel Creek POA failed to comply with its contractual obligations by taking actions such as: (1) unlawfully denying Plaintiffs the right to construct a barn on their property in violation of the terms of the Covenants and Declarations (id. ¶¶ 52-56,102, 198); (2) imposing excessive fines on Plaintiffs for violations that did not occur (id. ¶¶ 198, 59-60); (3) threatening to place liens on Plaintiffs' properties if they failed to pay the unlawful, retroactive assessments (id.¶¶ 198, 68-74); and (4) proposing various amendments to the terms and definition of the Declaration and Covenants in an effort to change the character of Steel Creek (id. ¶ 85-87, 198).

Defendant Paul Iooss, however, contends that the Court should dismiss the tortious interference with contract claims asserted against him because the factual allegations in the Amended Complaint admit a motive for tortious interference other than malice.  The Court notes that Defendant Paul Iooss failed to assert any

other grounds for dismissing the claim pursuant to Rule 12(b)(6). As such, the Court limits its assessment of Plaintiffs' claim to this lone issue.

Upon a review of the Amended Complaint and the relevant legal authority, the Court finds that the Amended Complaint sufficiently alleges that Defendant Paul Iooss undertook at least some of the alleged actions forming the basis of Plaintiffs' claim without justification.  Put simply, Plaintiffs have set forth detailed factual allegations that Defendant Paul Iooss acted without justification in inducing Defendant Steel Creek POA's non-performance of the contracts.  Although Defendant Paul Iooss may have a valid argument that any such actions were justified, such argument is more appropriate for a motion for summary judgment, not a Rule 12(b)(6) motion to dismiss because it involves a largely factual inquiry taking a number of factors into account.  See Bloch, 547 S.E.2d 51, 59 (N.C. Ct. App. 2001).  Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss filed by Defendant Paul Iooss [# 23].

## B. The Motion to Dismiss Filed by Defendant Steven Iooss

Plaintiffs also assert a tortious interference with contract claim against Defendant Steven Iooss.  Unlike Defendant Paul Iooss, the Amended Complaint does not contain any factual allegations that Defendant Steven Iooss undertook any actions himself in allegedly interfering with the contractual rights between

Plaintiffs and Defendant Steel Creek POA.  Instead, the Amended Complaint alleges that Defendant Paul Iooss deeded his property in Steel Creek to Defendant Steven Iooss, and that Defendant Paul Iooss was acting as the agent of Defendant Steven Iooss when he allegedly undertook the actions that Plaintiffs contend constitute tortious inference with contract.  (Pls.' Am. Compl. ¶¶ 113, 202, 205-07.)

Under North Carolina law, the agent-principal relationship requires two essential elements: (1) either the express or implied authority of the agent to act on behalf of the principal and (2) the principal's control over the agent.  State v. Weaver, 607 S.E.2d 599, 606 (N.C. 2005);  Phelps-Dickson Builders, L.L.C. v. Amerimann Partners , 617 S.E.2d 664, 669 (N.C. Ct. App. 2005).  "Additionally, both parties must consent that the agent will act on behalf of the principal in a particular capacity."  Weaver, 607 S.E.2d at 606.  Fatal to Plaintiffs' claim is the fact that the Amended Complaint is devoid of a single factual allegation supporting the conclusory allegation that Defendant Paul Iooss was acting as the agent of Steven Iooss.  There are no factual allegations in the Amended Complaint supporting the existence of an agency-principal relationship between Defendants Paul and Steven Iooss.  Absent such supporting factual allegations, the Amended Complaint fails to state a claim against Defendant Steven Iooss.  See generally,

Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; Consumeraffairs.com, 591 F.3d at 255.

Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the

Motion to Dismiss of Defendant Steven Iooss [# 30] and **DISMISS** Count Nine.

### C.     The Motion to Dismiss of Defendant Steel Creek POA

#### 1.     Plaintiffs' claim for the appointment of a receiver

Count One of the Amended Complaint asserts a claim for the appointment of

a receiver to temporary take control over the Steel Creek POA pursuant to N.C.

Gen. Stat. § 1-502(1).  (Pl.'s Am. Compl. ¶ 115.)  Although not addressed by either

party, N.C. Gen. Stat § 1-502(1) does not govern the appointment of a receiver in

this case.  Rather, the appointment of a receiver in this case is governed by federal

law.  See Sterling v. Stewart, 158 F.3d 1199, 1201 (11th Cir. 1998) ("Federal law

governs the appointment of a receiver by a federal court exercising diversity

jurisdiction."); Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314,

316 (8th Cir. 1993) ("The appointment of a receiver in a diversity case is a

procedural matter government by federal law and federal equitable principals");

12Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice

and Procedure § 2983 (2d ed. 1987) ("Whether a federal court should appoint a

receiver in a diversity action appears to be a question properly determined on the

basis of federal law."); Fed R. Civ. P. 66; see also Taylor v. Bettis, No. 7:09-CV-

-17-

183-F, 2013 WL 5460755 (E.D.N.C. Sept. 30, 2013) (unpublished) ("The majority of federal courts to have considered the issue have concluded that federal law governs a district court's decision on whether to appoint a receiver."); First United Bank & Trust v. The Square at Falling Run, LLC, Civil Action No. 1:11CV31, 2011 WL 1563108 (N.D. W. Va. Mar. 31 2011) (unpublished).  Accordingly, Plaintiffs' claim for the appointment of a receiver pursuant to N.C. Gen. Stat § 1-502(1) is subject to dismissal.  Moreover, the appointment of a receiver is not in and of itself a substantive claim.  Rather, the appointment of a receiver is a form of equitable relief vested in the inherent power of the district court.  See e.g. Sec. Exch. Comm'n v. Bowler, 427 F.2d 190, 197 (4th Cir. 1970); Hall v. Ballard, 90 F.2d 939 (4th Cir. 1937); 12 Wright, Miller & Marcus, supra ,§ 2983.  As such, Plaintiffs may move for the appointment of a receiver at any time, and either the District Court or this Court would conduct an appropriate hearing to determine whether Plaintiffs presented sufficient evidence to demonstrate that the appointment of a receiver satisfies the strict standard required for this Court to exercise its inherent power and grant such equitable relief.[3]  The Court, therefore, **RECOMMENDS** that the District Court **DISMISS without prejudice** Count

---

[3] The Court notes, however, that based on the facts in the Amended Complaint, the likelihood of this Court or the District Court exercising its discretion and granting such a motion is unlikely as this case does not appear to satisfy the high standard necessary for employing such an extraordinary remedy.  See generally 12 Wright, Miller & Marcus, supra ,§ 2983.

One.

2.    Plaintiffs' unjust enrichment claim

Count Four of the Amended Complaint asserts a claim for unjust enrichment

against Defendant Steel Creek POA.  In order to state a claim for unjust

enrichment, a plaintiff must allege facts demonstrating: (1) a measurable benefit

conferred on defendant; (2) that the defendant consciously accepted; and (3) the

benefit was not conferred on the defendant officiously or gratuitously.  Lake

Toxaway Cmty. Ass'n, Inc. v. RYF Enters., LLC, 742 S.E.2d 555, 561 (N.C. Ct.

App. 2013); JPMorgan Chase Bank, Nat'l Ass'n v. Browning, 750 S.E.2d 555, 559

(N.C. Ct. App. 2013); Primerica Life Ins. Co. v. James Massengill & Sons Constr.

Co., 712 S.E.2d 670, 677 (2011).   A benefit is conferred officiously where it is

conferred by an interference in the affairs of the defendant in a manner that is

unjustified under the circumstances.  Browning, 750 S.E.2d at 559.

> The doctrine of unjust enrichment was devised by equity to exact the
> return of or payment for, benefit received under circumstances where
> it would be unfair for the recipient to retain them without the
> contributor being repaid or compensated. More must be shown than
> that one party voluntarily benefited another or his property.

> Id. at 560 (internal quotations and citation omitted).

Here, the Amended Complaint sets forth sufficient factual allegations supporting

each of the necessary elements for an unjust enrichment claim.  Plaintiffs allege

that they spent approximately $1 million conferring a benefit on Defendant Steel Creek POA by undertaking the development, construction, maintenance and upkeep of roads within Steel Creek despite the fact that these costs should have been shared amongst each of the property owners.  (Pl.'s Am. Compl. ¶¶ 164-67.) In addition, Plaintiffs allege that Defendant Steel Creek POA accepted the benefit, and that the benefit was not conferred by Plaintiffs on Defendant Steel Creek POA gratuitously.  (Id. ¶¶ 168-69.)  This is all that is required to state a claim for unjust enrichment under North Carolina law.  Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 25] as to Count Four.

### 3. Plaintiffs' claim for breach of covenant of quiet enjoyment

Count Five asserts a claim for breach of covenant of quiet enjoyment against Defendant Steel Creek POA. Typically, a claim for breach of the covenant for quiet enjoyment arises in the landlord/tenant context and where the title to land is defective.  See e.g., Hodges v. Wilkinson, 15 S.E. 941, 942 (N.C. 1892) ("[A] breach is created and the right of action accrues at the time of the same, if the title of the seller is then defective."); K&S Enterprises v. Kennedy Office Supply Co., Inc., 520 S.E.2d 122, 267 (N.C. Ct. App. 1999) ("[A]bsent a lease provision to the contrary, a lease carries an implied warranty that the tenant will have the quiet and peaceable possession of the leased premised during the term of the lease." ).  While

a property owner may enjoy certain property rights, parties may limit those rights by entering restrictive covenants.  See Page v. Bald Head Ass'n, 611 S.E.2d 463, 465-65 (N.C. Ct. App. 2005); Cantillana v. Five Oaks Homeowners Ass'n, 722 S.E.2d 211, 2012 WL 698184, at *2-3 (N.C. Ct. App. Mar. 6, 2012) (unpublished). "Because they infringe upon the unrestrained use of land, however, restrictive covenants are only valid so long as they do not impair the enjoyment of the estate and are not contrary to the public interest." Page, 611 S.E.2d at 465 (internal quotation and citation omitted).

Although not entirely clear from the cursory argument in Defendant Steel Creek POA's brief, it appears that Defendant Steel Creek POA contends that actions for breach of covenant of quiet enjoyment are limited to situations involving the conveyance of land without good title and where there is a lease between a landlord and tenant.  The one page legal argument set forth by Defendant Steel Creek POA, however, contains only a cursory legal discussion of this issue and fails to provide the Court with any legal authority supporting its contention that Plaintiffs' claim must fails as a matter of law.  It is not the role of this Court to serve as counsel for Defendant Steel Creek POA, conduct counsel's legal research on an issue, and develop the cursory legal arguments contained in a brief into coherent and persuasive arguments supported by legal authority.  Based

on the hastily thrown together legal argument submitted by Defendant Steel Creek POA to this Court, the Court will not recommend that the District Court dismiss Plaintiffs' claim for breach of the covenant of quiet enjoyment.[4] Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the motion [# 25] as to Count Five.

### 4. Plaintiffs' claim for declaratory judgment

Count Three asserts a claim for declaratory judgment against Defendant Steel Creek POA. Plaintiffs seek a declaratory judgment defining various rights and obligations of the parties pursuant to the Protective Covenants, Declarations, and Bylaws of Steel Creek POA. (Pls.' Am. Compl. ¶¶ 134-159.) Specifically, Plaintiffs seek a declaration from this Court as to six distinct issues. (Pl.'s Am. Compl. ¶ 135.) Defendant Steel Creek POA, however, contends that the Court should dismiss this claim in its entirety for the sole reason that one of the six issues is not ripe for adjudication. Defendant Steel Creek POA does not address each of the six issues for which Plaintiffs seek a declaratory judgment, and it offers little more than a conclusory argument that the Court should dismiss the claim in its entirety. More is expected for counsel litigating in this Court if counsel hopes to have this Court recommend that the District Court grant a motion to dismiss.

---

4        The Court also notes that Defendant Steel Creek POA failed to even file a reply brief addressing the various issues Plaintiffs raised in response to the Motion to Dismiss. Cursory legal arguments such as these waste the resources of the Court and the parties.

Because even if this Court were to agree with Defendant Steel Creek POA that the request for declaratory relief set forth in paragraph 135(d) of the Amended Complaint is not ripe for adjudication it would not dismiss Count Three in its entirety as requested by Defendant Steel Creek POA, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 25] as to Count Five.

## III.    Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss of Defendant Steven Iooss [# 30], **DISMISS** Count Nine, and **TERMINATE** Defendant Steven Iooss as a party to this action.   The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss of Defendant Paul Iooss [# 23].  Consistent with this Memorandum and Recommendation, the Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the Motion to Dismiss of Defendant Steel Creek Property Owners Association [# 25].  The Court **RECOMMENDS** that the District Court **GRANT** the motion [# 25] as to Count One and **DISMISS without prejudice** Count One.  The Court **RECOMMENDS** that the District Court **DENY** the motion [# 25] as to the remaining claims.

Signed: March 3, 2014

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).