**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:13-cv-121-MR-DLH**

| | |
|---|---|
| **WILLIAM R. SCHERER and<br>ANNE SCHERER,**           )<br>           )<br>       **Plaintiffs,**    )<br>           )<br>    **vs.**           )<br>           )<br>           )<br>**STEEL CREEK PROPERTY OWNERS )<br>ASSOCIATION, PAUL IOOSS, and** )<br>**STEPHEN IOOSS,**      )<br>           )<br>      **Defendants.**   )<br>_____ ) | **O R D E R** |

      **THIS MATTER** is before the Court on Defendants' Motions to Dismiss [Docs. 23, 25, and 30]; the Magistrate Judge's Memorandum and Recommendation regarding the disposition of those motions [Doc. 52]; Plaintiffs' Limited Objections to the Memorandum and Recommendation [Doc. 56]; and, Plaintiffs' Motion for Partial Summary Judgment [Doc. 21].

**I.**    <u>**DEFENDANTS' MOTIONS TO DISMISS**</u>.

    **A.**    **Background.**

      This matter arises from the Plaintiffs' efforts to build a horse farm on lots within the Steel Creek development in Transylvania County, North

Carolina. The history of the wrangling and animosity between the Plaintiffs and the Defendants is long and tortured, culminating in the filing of this action.

Only a small portion of this case is before the Court for disposition at this time. The Defendants filed a motion to dismiss for failure to state a claim. Pursuant to 28 U.S.C. § 636(b) and a specific Order of referral of the District Court, the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider Defendants' pending motions to dismiss in the above-captioned action and to submit to this Court a recommendation for the disposition of these motions.

On March 3, 2014, the Magistrate Judge filed a Memorandum and Recommendation [Doc. 52] in this case containing proposed conclusions of law in support of a recommendation regarding the motions. [Docs. 23, 25, and 30]. The parties were advised that any objections to the Magistrate Judge's M&R were to be filed in writing within fourteen (14) days of service. The Plaintiffs timely filed their objections on March 17, 2014. [Doc. 56].

**B.    Plaintiffs' Objection.**

The Plaintiffs' very limited objections to the M&R pertain only to the Magistrate Judge's recommendation that Count Nine against Defendant

Steven Iooss be dismissed. The Plaintiffs object to the Magistrate Judge's recommendation that the claim against Defendant Steven Iooss be dismissed due to the Plaintiffs' factual allegations being insufficient to support a legal conclusion that there was any agency relationship between him and Defendant Paul Iooss. The Magistrate Judge concluded that the Plaintiffs' factual allegations were insufficient to support a legal conclusion that Paul Iooss was the agent of Steven Iooss and therefore concluded that no claim has been stated against Steven Iooss. To this, Plainitffs object. Alternatively, Plaintiffs seek leave to amend their pleadings "to more clearly articulate the agency relationship." [Doc. 56 at 4]. For the reasons that follow, the Court will reject Plaintiffs' legal objection and will deny their request to amend their pleadings.

## STANDARD OF REVIEW

The Court begins by noting that Plaintiffs have identified the wrong standard of review in their Objections. In the face of Defendant Steven Iooss' motion to dismiss, premised upon Fed.R.Civ.P. 12(b)(6), Plaintiffs assert that

> this Court's only inquiry now is whether it appears beyond doubt that the Plaintiffs can prove no set of facts in support of their claim. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Partington v. Am. Int'l Specialty Lines Ins. Co., 443

3

F.3d 334 (4th Cir. 2006). For the reasons stated above, it does not appear **beyond doubt** that Plaintiffs can prove **no set of facts** in support of their claim.

[Doc. 56 at 4]. This "no set of facts" standard has been expressly repudiated by the Supreme Court.

> Conley's "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the Conley Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562-63 (2007). In place of the "no set of facts" standard, the Supreme Court requires now that factual allegations must be sufficient to raise a right to relief above the speculative level and that courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 555. More precisely stated:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to

4

a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

**DISCUSSION**

With the standard of review properly stated, Plaintiffs' allegations in their Amended Complaint against Defendant Steven Iooss fail the plausibility test. Plaintiffs provide no factual allegations in their Amended Complaint to support their claim that Paul Iooss was an agent of Steven Iooss. Plaintiffs simply allege legal conclusions throughout their Amended Complaint that "[a]t all times after PAUL IOOSS deeded his property in Steel Creek to STEVEN IOOSS, PAUL IOOSS was acting as an agent and on behalf of STEVEN IOOSS." [Doc. 5 at 54, ¶113]. See also Amended Complaint at ¶202 ("At all times hereto, Paul Iooss was the agent of Defendant Steven Iooss and acting with [sic] the course and scope of the agency.") [Id. at 76]; Amended Complaint at ¶205 ("As set forth above, Paul Iooss, acting as an agent of Steven Iooss, …") [Id. at 77]; Amended Complaint at ¶206 ("Paul Iooss, acting as an agent of Steven Iooss, …")

[Id.]; Amended Complaint at ¶207 ("As a direct and proximate result of Paul Iooss's, [sic] acting as an agent of Steven Iooss, intentional interference, Plaintiffs have suffered actual damages.") [Id.].

In the ordinary case it is a simple matter to plausibly allege agency. Usually there are factual allegations of an employment relationship or actions on the part of the purported principal that give rise to the authority of the purported agent. Here, however, Plaintiffs allege nothing more than the purported agent (Paul) deeded certain property to the purported principal (Steven) and ergo Paul's further actions were as agent of Steven. The logical leap is too broad to survive Twombly/Iqbal.

These allegations, both individually and collectively, amount to nothing more than "threadbare recitals of a cause of action's elements supported by mere conclusory statements." Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013) (citations and quotations omitted). It is somewhat startling that the Plaintiffs' allegations on this crucial point are so threadbare in light of the fact that Plaintiffs' Amended Complaint is *78 pages long*. [Doc. 5]. Be that as it may, these allegations against Steven Iooss are insufficient under the Twombly/Iqbal framework to state a claim

against him based on actions taken by Paul Iooss. Therefore, the dismissal of this claim against Steven Iooss is appropriate pursuant to Rule 12(b)(6).

Plaintiffs alternatively contend that, in the event their allegations in the Amended Complaint against Steven Iooss are inadequate to state a claim, they should be permitted to amend their Amended Complaint to more artfully draw their claim against him. [Doc. 56 at 4-5].

As a threshold matter, the Court notes that Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure allows for an amendment as of right within 21 days of service of a Rule 12(b) motion. The purpose of that rule is to allow a party to recast or replead his claim when a defect is brought to his attention. It is also designed to prevent precisely what the Plaintiffs seek to do in this case: force a decision on whether the pleading is adequate and then try to use the Court's ruling as a basis on which to formulate an amendment. Such would transform District Court rulings on Rule 12(b)(6) motions into nothing more than advisory opinions, instructing counsel how to recast his pleadings. Outer Banks Beach Club Ass'n, Inc., v. Festiva Resorts Adventure Club Member's Ass'n, Inc., 2012 WL 4321327 (Sept.20, 2012). That is not a function of this Court. For this reason alone Plaintiffs' motion to amend should be denied.

In addition, however, Plaintiffs' motion will be denied because any such amendment would be futile. Plaintiffs have not proffered any proposed allegations that would indicate that an agency relationship existed between Paul and Steven Iooss. They have merely asserted that Paul Iooss deeded his property to Steven Iooss but then Paul remained on the Steel Creek homeowners' board. In North Carolina, an agency relationship may arise upon a finding of either actual or apparent authority. Actual authority, as the name denotes, comes about when a principal actually holds out his agent as a person possessing authority derived from the principal. Zimmerman v. Hogg & Allen, 286 N.C. 24, 31, 209 S.E.2d 795, 799 (1974). Apparent authority results from a principal either tacitly or explicitly stating or agreeing to the agent's authority. Put another way, any statements made solely by a purported agent, without the express or implied knowledge and consent of the purported principal, are insufficient to create an agency relationship. Orr v. Orgo, 12 N.C. App. 679, 680, 184 S.E.2d 369, 369 (1971).

Plaintiffs assert that documents attached to their Amended Complaint establish that Paul Iooss held himself out as the agent for Steven Iooss. [Doc. 56 at 2-4]. Taking this as true, it satisfies only one of the two

necessary elements of agency. To state a claim against Steven Iooss, Plaintiffs must assert facts plausibly showing that Steven explicitly or implicitly agreed that Paul was his agent. The Plaintiffs, however, offer only conjecture. Plaintiffs argue that,

> [d]espite knowing that Paul could not serve on the Board, Steven either expressly or implicitly authorized his father to act on his behalf and controlled him by allowing him to serve on the rogue Board under the false pretense that Paul still owned the Steel Creek property now owned by Steven. … [I]f Steven did not authorize and control the wrongful acts committed by Paul as member of the Board, he would have objected to Paul's presence on the Board and prevented the tortious interference.

[Id. at 3-4]. This assertion, however, has no basis in any allegation of fact. Moreover, it is not contained in any pleading of record. The Plaintiffs have pleaded nothing of the sort. More importantly, however, this assertion, even if true, falls well short of the line between possibility and plausibility of entitlement to relief. As such, any amendment to their pleadings to include such conjectural allegations would be pointless.

Finally, the Court pauses here to observe that it is not evaluating the pleadings of the typical litigant. Plaintiff William Scherer is an attorney. His firm, in fact, is pro hac vice co-counsel in this matter. While he is not held to any greater standard than a litigating non-lawyer plaintiff, few plaintiffs

enjoy the legal training and education necessary to review and to discuss in detail the documents filed in a civil action with counsel of record.

Based upon the foregoing, the Court hereby overrules the Plaintiffs' Objections and accepts the Magistrate Judge's recommendations.

## II.   PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

This action was commenced on April 30, 2013, with the filing of Plaintiffs' Complaint. [Doc. 1]. Plaintiffs filed a 78 page Amended Complaint as a matter of course on May 14, 2013. [Doc. 5]. Before Defendants filed any responsive pleadings, Plaintiffs filed a Motion for Partial Summary Judgment. [Doc. 21]. Plaintiffs' Motion seeks summary judgment only as to one aspect of Count Three of the Amended Complaint and only as against one defendant, Steel Creek Property Owners Association ("POA"). [Id. at 15]. Plaintiffs seek summary judgment on one declaratory claim that Defendant POA failed timely to provide documents to them under Article 16 of the North Carolina Nonprofit Corporation Act. As alleged by Plaintiffs, the particular aspect of Count Three at issue states:

> 135. This is an action pursuant to 28 U.S.C.A. § 2201 to obtain a declaratory judgment from this Court that:

> * * * * * * * * * *

> f. the POA violated the provisions of N.C [sic] Stat. §
> 55A-16-02 by failing to provide Plaintiffs with a specific
> time and location in which Plaintiffs could inspect and
> copy records that were requested as permitted by N.C
> [sic] Stat. § 55A-16-01.

[Doc. 5 at 60]. Plaintiffs' allegations contained in paragraph 135(f) of their Amended Complaint stem from their attorney's letter written to then-counsel for Defendant POA on February 14, 2013. [Doc. 21 at 4]. This letter pertains to the dispute between Plaintiffs and Defendant POA regarding Defendant POA's denial of Plaintiffs' construction plans for their barn and garage. Relevant to the Plaintiffs' partial summary judgment motion is the following excerpt from the February 14, 2013, letter:

> It is obvious that the Declarations permit the building of the barn and garage by Mr. Scherer on his ten (10) acre lot as is shown on this submission. If that is not the case, the Restrictive Covenants are so ambiguous and vague and indefinite as to be unenforceable as pointed [sic] in my December 27th response to Mr. Iooss' letter of December 13th.

> Should Mr. Scherer's plans not be approved, as they should be, I request that the POA provide the following documents at least thirty (30) days prior to any hearing or any other activity by the POA concerning Mr. Scherer's buildings and/or property.

> The documents requested are as follows:

> 1. Articles of Formation for the Steel Creek Property Owners Association ("POA"), excluding the Protective

Covenants, recorded in Book 442/513, Transylvania County Registry;

2. Any and all supporting documents providing for the creation of the POA.

3. POA Meeting Minutes regarding turnover of responsibilities from Developer;

4. Turnover Agreement between Developer, Line Runner and POA;

5. Any agreements regarding road maintenance;

6. The present membership of the Board of Directors and Officers of the Property Owners Association, including names, addresses, and contact information;

7. The names, addresses and contact information of the Officers and members of the present Architectural Review Committee;

8. Copies of the minutes of any board meeting which elected the present officers;

9. Copies of any meeting or minutes which appointed or elected the present Architectural Review Committee; and

10. Copies of any minutes of any meeting which appointed or elected the present officers of the Architectural Review Committee.

11. A map or diagram of Steel Creek Subdivision showing all of the lots with original Steel Creek lot number assigned by the Property Owners Association to each lot. I have obtained a tax map with pin numbers, but cannot locate any Steel Creek Subdivision Map or diagram with the original lot numbers. We need the POA lot designations for each lot in Steel Creek.

12. The name and address of the current owner of each lot in Steel Creek with the appropriate lot number assigned by the Steel Creek Property Owners Association.

13. All documents submitted to the Architectural Review Committee for each building on each lot in Steel Creek.

14. All documents of the Architectural Review Committee responding to each submission by the lot owner; including, but not limited to, all comments of the Committee concerning the building; all rejections of the building; all approvals of the building and/or all changes or alterations required by the

Committee. Finally, we would need the result of the Committee's work, including whether or not the building was constructed and its final design, if it was constructed.

15. A listing of each building existing on each lot in Steel Creek Subdivision with documentation approving said building by the Architectural Review Committee, including the final drawing, diagram, blueprint or other design submitted to the Architectural Review Committee and the Committee's final approval of each such building.

16. A description of the roads within Steel Creek Subdivision constructed by the Property Owners Association since the Property Owners Association took over Steel Creek development from its Developer, Line Runner; including the name of the road so constructed, the location by lot number affected by the improvements, a description of the work done, the lots affected, the cost of the work done and cancelled check, receipts, paid invoices or other evidence of payment by the Property Owners Association for the work done.

17. A description of the road improvements undertaken on any road in the subdivision by the Property Owners Association since its inception, including the name of the road, location of the lot numbers affected by the improvements, a description of the work done, the lots affected by the work, cost of the work done and receipts, paid invoices or cancelled checks indicating payment by the Property Owners Association for the work done.

18. A description of any road maintenance performed by the Property Owners Association including name of the road, location by lot number affected by the maintenance, a description of the work done, the lots affected and the cost of the work done, including receipts, paid invoices or cancelled checks for payment of the maintenance done.

19. A description of any other improvements (other than road construction, road improvements or road maintenance) undertaken and completed by the Property Owners Association for Steel Creek Subdivision, including the location of said improvement, the lots affected, a description of the work done, cost of the work done, any documentation of payment for said

improvement or other evidence of the finances concerning said improvements.

20. All correspondence, paper writing, emails, or any other electronic or digital message to and from any member of the POA, to or from any Officer or Director of the POA, to or from any Committee Member of the POA regarding Mr. Scherer's property. This includes its use for a horse farm as well as his platting of the Steel Creek lots into smaller lots for his own purpose; and, of course, his addition of the buildings which are the subject of this submission.

21. Any and all correspondence, paper writing, emails, or other electronic or digital message regarding Mr. Scherer's property or its use by and between any member of the POA, its Officers, Directors or Committee Members and Mr. Mike Meany or Line Runner, the original developer.

[Doc. 21-6 at 2 to 5].

On July 12, 2013, Defendant Paul Iooss and Defendant Stephen Iooss filed responses objecting to the Plaintiffs' motion. [Docs. 34 and 36]. On July 26, 2013, Defendant POA filed its Memorandum in Opposition to Plaintiffs' motion. [Doc. 38].

## STANDARD OF REVIEW

In reviewing a party's motion for summary judgment, this Court is mindful that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" if it "might affect the outcome of the case." N&O Pub. Co. v. RDU Airport

Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue exists. Id. Finally, in considering the motion for partial summary judgment filed by the Plaintiffs, the Court must view the pleadings and materials presented in the light most favorable to the Defendants, the non-moving parties, and must draw all reasonable inferences in Defendants' favor as well. Adams v. UNC Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

## DISCUSSION

The North Carolina Nonprofit Corporation Act provides the basis on which Plaintiffs seek partial summary judgment and an order of declaratory relief. Article 16 of Chapter 55A, N.C. Gen. Stat. § 55A-16-01 et seq., addresses the "Records and Reports" required to be kept by a nonprofit corporation as well as the manner in which they may be disclosed to members of the corporation. As it pertains to this latter issue, the North Carolina legislature has set up two tiers of disclosure for documents maintained by nonprofit corporations. The first tier entitles a member, *upon a proper request*, to inspect and copy the fundamental corporate documents at a reasonable time and location. N.C. Gen. Stat. § 55A-16-02(a). The fundamental documents that the corporation must keep and disclose upon a proper request are:

> (1) Its articles of incorporation or restated articles of incorporation and all amendments to them currently in effect;
> (2) Its bylaws or restated bylaws and all amendments to them currently in effect;
> (3) Resolutions adopted by its members or board of directors relating to the number or classification of directors or to the characteristics, qualifications, rights, limitations, and obligations of members or any class or category of members;
> (4) The minutes of all membership meetings, and records of all actions taken by the members without a meeting pursuant to G.S. 55A-7-04 or G.S. 55A-7-08, for the past three years;

（5) All written communications to members generally within the past three years, and the financial statements, if any, that have been furnished or would have been required to be furnished to a member upon demand under G.S. 55A-16-20 during the past three years; and
（6) A list of the names and business or home addresses of its current directors and officers.

Id., § 55A-16-01(e)(1)-(6).  A *proper request* is made "if the member gives the corporation written notice of his demand at least five business days before the date on which the member wishes to inspect and copy."  Id., § 55A-16-02(a).

The second tier entitles a member, *upon both a proper request **and** a proper showing*, to inspect and copy other corporate documents at a reasonable time and location.  Id., § 55A-16-02(b).  These other documents that the corporation must keep and disclose are:

(1) Excerpts from the minutes of all meetings of its members and board of directors, the record of any actions taken by the members or directors without a meeting, the record of any actions taken by committees of the board of directors in place of the board of directors on behalf of the corporation, as well as excerpts from any records required to be maintained under G.S. 55A-16-01(a), to the extent not subject to inspection under G.S. 55A-16-02(a);
(2) Accounting records of the corporation; and
(3) Subject to G.S. 55A-16-05, the membership list.

Id., § 55A-16-02(b)(1)-(3).  The "proper request" element is met in the same manner as with § 55A-16-02(a); the member must "give[ ] the corporation

written notice of his demand at least five business days before the date on which the member wishes to inspect and copy." Id., § 55A-16-02(b). A *proper showing,* however, is established "only if:"

> (1) The member's demand is made in good faith and for a proper purpose;
> (2) The member describes with reasonable particularity the purpose and the records the member desires to inspect; and
> (3) The records are directly connected with this purpose.

Id., § 55A-16-02(c)(1)-(3) (emphasis added).

In this matter, the Plaintiffs failed to invoke Article 16 of Chapter 55A. Nowhere in the letter sent by Plaintiffs' counsel did he mention Article 16 or cite to the document inspection statute, N.C. Gen. Stat. § 55A-16-02. Even if the Court were to construe the February 14, 2013, letter as invoking Article 16, the Plaintiffs fair no better.

Looking at the first tier documents sought, Plaintiffs, through counsel's letter, failed to make a proper request of Defendant POA entitling them to inspect and copy Defendant POA's records. Plaintiffs' attorney requested "that the POA provide the following documents at least thirty (30) days prior to any hearing or any other activity by the POA concerning Mr. Scherer's buildings and/or property." [Doc. 21-6 at 2]. Moreover, it is phrased as a conditional request. As such, this letter was ambiguous at

best. In addition, Plaintiffs never gave the corporation written notice of the date on which they wished to inspect and copy Defendant POA's records as required by the statute. N.C. Gen. Stat. § 55A-16-02(a). For these reasons, the Plaintiffs' request did not comply with the requirements of the statute and, thus, they were not entitled to inspect or copy any tier one documents of Defendant POA under § 55A-16-02(a).

For the same reasons, Plaintiffs failed to make a proper request for any of the tier two documents. Further, Plaintiffs failed to make any showing for any second tier documents in accordance with the additional elements of § 55A-16-02(b). Plaintiffs' counsel's letter is devoid of any descriptions, let alone a description with "reasonable particularity," identifying the "proper purpose" for which the records are to be used. Finally, Plaintiffs' counsel's letter fails to provide any explanation explicitly connecting the records requested directly with the purpose for their request. N.C. Gen. Stat. § 55A-16-02(c)(2)-(3). Plaintiffs argue, though, "it is unmistakable" that the purposes behind their document request was to investigate their suspicion that Defendant POA "was taking unlawful and unjustifiable action against Plaintiffs." [Doc. 21 at 11]. Nowhere in the letter, however, does Plaintiffs' counsel state, let alone suggest or imply,

that Defendant POA was taking "unlawful and unjustifiable action against Plaintiffs." Without alleging that Defendant POA was acting in derogation of the subdivision's restrictive covenants, Plaintiffs' counsel, in his letter, urged Defendant POA to approve Plaintiffs' barn and garage plans stating it is "obvious" the covenants permit the construction of Plaintiffs' outbuildings. "If that is not the case, the Restrictive Covenants are so ambiguous and vague and indefinite as to be unenforceable[.]"  Simply put, the February 14, 2013, letter by Plaintiffs' counsel was an effort by him to persuade Defendant POA to approve Plaintiffs' barn and garage plans. Barring that, Plaintiffs' counsel argued that any adverse decision by Defendant POA with respect to Plaintiffs' construction plans would be based upon "unenforceable" covenants. Counsel's letter said nothing as to any adverse decision by Defendant POA being "unlawful and unjustified."  [Doc. 21-6 at 2].  The covenants are unenforceable, according to Plaintiffs' counsel, because they are subject to competing interpretations (i.e., they are "ambiguous and vague and indefinite"). The document request made in counsel's letter, however, is not germane to any alleged shortcomings in the covenants.  The February 14, 2013, letter by Plaintiffs' counsel clearly was not written with Article 16 of Chapter 55A in mind. Plaintiffs'

protestations to the contrary, such letter does not comply in any respect with the strictures of N.C. Gen. Stat. § 55A-16-01 et seq.

Finally, the structure of the document inspection statute at issue indicates the North Carolina legislature wished to thwart fishing expeditions into the books and records of corporations by their members. See Parsons v. Jefferson-Pilot Corp., 106 N.C. App. 307, 323, 416 S.E.2d 914, 924 (1992), aff'd in part and rev'd in part, 333 N.C. 420, 426 S.E.2d 685 (1993) (by enacting § 55-16-02(c), the public corporation counterpart to § 55A-16-02(c), the legislature specifically restricted shareholder inspection rights thereby precluding impermissible "fishing expeditions" into corporate records). Subsections (2) and (3) of 55A-16-02(c) demand that a member explain beforehand the purposes behind requesting tier two documents and the reasons why these documents are "directly connected" with such purposes so as to corroborate the member's "good faith" in seeking the documents in the first instance. Id., § 55A-16-02(c)(1). Ironically, the Parsons case cited by Plaintiffs, [Doc. 21 at 11], gives textbook examples of the showing necessary to comply with the statute's requirement that the documents sought bear a direct connection with "reasonable particularity" to the "proper purpose" espoused by the seeking member. Because

Plaintiffs failed to make this showing, especially when compared with the showing made by the plaintiff in <u>Parsons</u>, the Court concludes their second tier document requests were not made upon a proper showing.[1]

While Defendant POA opposes partial summary judgment claiming Plaintiffs' motion lacks merit under state law, it nevertheless has filed affidavits showing that it has produced all the records it could gather with respect to the demands contained in the February 14, 2013, letter by Plaintiffs' counsel. [Docs. 38-1 to 38-4]. Defendant POA's document production, however, does not render Plaintiffs' motion moot. Undeterred by their failure to follow the procedures prescribed by Article 16 of Chapter 55A, Plaintiffs not only seek partial summary judgment on their purported claim encompassed within their attorney's letter, but also attorneys' fees due to Defendant POA's alleged recalcitrance. [Doc. 21 at 15].

To be entitled to an award of attorneys' fees, a member must first be entitled to a court order compelling the corporation to disclose the documents requested by the member. North Carolina General Statute

---

[1] It should be noted that since the Plaintiffs have filed this action they will presumably conduct discovery, which may include seeking the documents at issue here. By filing this motion and thus forestalling the entry of a Case Management Order in this case, Plaintiffs have only succeeded in *delaying* their receipt of any documents to which they might be entitled. This certainly raises the question of whether the Plaintiffs are undertaking this course of conduct to obtain documents they want, or whether they endeavor merely to harass the Defendants.

Section 55A-16-04 provides, "[i]f a corporation does not allow a member *who complies with G.S. 55A-16-02(a)* to inspect and copy any records required by that subsection to be available for inspection," the corporate member may move the Court to summarily order inspection and copying of the records demanded at the corporation's expense.  Id., § 55A-16-04(a) (emphasis added).  Compliance with § 55A-16-02 is a prerequisite to obtaining both a court order compelling document production and an award of attorneys' fees from a corporation. "If the court orders inspection and copying of the records demanded [pursuant to § 55A-16-04(a)], it shall also order the corporation to pay the member's cost (including reasonable attorneys' fees) incurred to obtain the order[.]" § 55A-16-04(c).

As noted throughout this discussion, Plaintiffs failed to comply § 55A-16-02.  The fact that Defendants voluntarily provided Plaintiffs with documents in their possession responsive to Plaintiffs' request is of no moment.  Accordingly, and because Plaintiffs are not entitled to an order compelling production of the documents, Plaintiffs' additional request for attorneys' fee is unavailing.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Magistrate Judge's Memorandum and Recommendation [Doc. 52] is **ACCEPTED**; the Plaintiffs' Objections thereto [Doc. 56] are **REJECTED**; Defendant Steel Creek Property Owners Association's Motion to Dismiss [Doc. 25] Count One of Plaintiffs' Amended Complaint is **GRANTED** and Count One is **DISMISSED**; Defendant Steven Iooss' Motion to Dismiss [Doc. 30] Count Nine is **GRANTED** and Defendant Steven Iooss is **TERMINATED** as a party to this action; and the remaining claims in Defendant Steel Creek Property Owners Association's Motion to Dismiss [Doc. 25], as well as Defendant Paul Iooss' Motion to Dismiss [Doc. 23], are all **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [Doc. 21] as contained in paragraph 135(f) of Plaintiffs' Amended Complaint [Doc. 5 at 60] is **DENIED** and that claim, together with Plaintiffs' claim of attorneys' fees associated with it, are **DISMISSED**.

**IT IS SO ORDERED.**

Signed: May 27, 2014

Martin Reidinger
United States District Judge