| | |
|---|---|
| **WILLIAM R. SCHERER and ANNE SCHERER,** )<br><br>Plaintiffs, )<br><br>vs. )<br><br><br>**STEEL CREEK PROPERTY OWNERS ASSOCIATION, PAUL IOOSS, and STEPHEN IOOSS,**<br><br>Defendants.<br>_____ ) | <br>)<br>)<br>)<br>)<br><u>**MEMORANDUM OF DECISION AND ORDER**</u><br>)<br>)<br>)<br>)<br>)<br>)<br>) |

THIS MATTER is before the Court on the Defendant Paul Iooss'
Motion for Summary Judgment [Doc. 146]; the Plaintiffs' Motion for Summary
Judgment [Doc. 150]; the Defendant Steel Creek Property Owners
Association's Motion for Summary Judgment [Doc. 152]; the Plaintiffs'
Motion to Appoint Receiver [Doc. 154]; and the Plaintiffs' Motion for Leave
to file supplemental briefing. [Doc. 181].

## <u>BACKGROUND</u>

The following facts are not in dispute. Plaintiffs purchased three
platted lots in the Steel Creek Development in 2000-01, and a fourth lot in

2006, consisting of a total of 81.09 acres. [Doc. 5 at 9-11]. They proposed constructing a horse farm on the property. [Id. at 2].

In 2008 Plaintiffs recorded plats further subdividing their property from four into sixteen lots. [Doc. 147-12 at 3-5]. This was done with the approval of the Board of the Defendant Steel Creek Property Owners Association (POA). [Doc. 147-12 at 2]. The purpose of the re-subdivision was for the Plaintiffs to obtain refinancing for their project. [Doc. 147-5 at 48].

Plaintiffs thereafter built new roads on their property that were not platted on the original Steel Creek plats, and erected gates across the roads to limit access to their property. [Doc. 147-5 at 62-65, 180-81]. They submitted for the POA's approval rudimentary plans for a barn and storage buildings on the property. From there things deteriorated quickly. Plaintiffs proceeded with construction without first obtaining POA approval. Approval was thereafter denied and the Plaintiffs were threatened with fines for having commenced without approval. [Docs. 5-16, 5-17, 5-18]. At this point the lawyers got involved and the overall relationship became acrimonious. [e.g., Docs. 47-19, 5-8, 21-7].

The POA then began charging the Plaintiffs road assessments based on their having sixteen platted lots, rather than four. [Doc. 5-20]. For this the POA relied on the restrictive covenant that reads "The pro-ration [of road

maintenance costs] shall be calculated according to *the number of platted lots* in Steel Creek." [Doc. 5-1 at 2] (emphasis added). These assessments were made retroactive to the time of the Plaintiffs' re-platting of their property. Interest at the rate of eighteen percent was charged on the prior years' assessments, thus increasing the total demand upon the Plaintiffs to $23,693.70. [Doc. 5-20]. Plaintiffs paid this amount under protest and filed this suit. [Doc. 153-7].

Based on these facts the Plaintiffs present five claims against the POA: 1) pursuant to the North Carolina Debt Collection Act (NCDCA) for the attempt to collect the assessments (Count II), 2) for unjust enrichment (Count IV), 3) for breach of the covenant of quiet enjoyment (Count V), 4) for conversion, regarding the assessments (Count VI), and 5) seeking various declaratory judgments (Count III). Plaintiffs also make a claim against Defendant Paul Iooss, a member of the POA Board, for interference with contract (Count VIII).[1] [Doc. 5].

## STANDARD OF REVIEW

---

[1] Plaintiffs also presented a claim for the appointment of a receiver (Count I), and an interference claim against Steven Iooss (Count IX), both of which were dismissed by prior order of this Court. Plaintiffs also presented a claim seeking a declaration that the POA was estopped from rescinding a prior approval of certain land clearing activity and development of the property as a horse farm (Count VII). The POA concedes this claim.

The parties have submitted cross-motions for summary judgment under Federal Rule of Civil Procedure 56, wherein each party contends that there are no factual issues for trial and that judgment may be rendered as a matter of law based upon the record. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." N&O Pub. Co. v. RDU Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Upon review of the record before the Court, the Court concludes that the facts are adequately presented therein, and that no genuine dispute as to any material fact exists. Accordingly, summary judgment is an appropriate means by which to resolve the issues presented by the parties.

## <u>DISCUSSION</u>

### I.     Propriety of the Assessments

The threshold question in this matter is whether the Plaintiffs owed the assessments that they paid under protest.

The Plaintiffs do not present this issue in a straight forward manner. It is buried in a 78-page Complaint in the context of a claim pursuant to the

North Carolina Debt Collection Act (Count II) and a claim for conversion (Count VI). Nonetheless, giving the Plaintiffs the benefit of a liberal construction of their allegations, the Court begins with this issue.

In 2013, Defendant Steel Creek POA retroactively assessed Plaintiffs for their sixteen lots as platted in their re-subdivision of their property that they undertook in 2008. Plaintiffs paid this $23,693.70 ($15,400 assessments plus $8,293.70 interest) under protest. Plaintiffs now seek reimbursement of the amounts improperly charged.

To determine the propriety of these assessments, the Court must turn to the restrictive covenants that call for the assessments. The interpretation of the language of a restrictive covenant is a question of law. Erthal v. May, 223 N.C. App. 373, 378, 736 S.E.2d 514, 517 (2012).

The language at issue herein is contained in Covenant number 13 of the Declaration. That Covenant states in full:

> 13. ROAD MAINTENANCE FEES. Each lot owner shall be responsible for a pro-rata share of the cost of maintaining the roads within Steel Creek and their continuation to Highway 276, and for the cost of carrying out the lawful purposes of the Property Owners Association. ***The pro-ration shall be calculated according to the number of platted lots in Steel Creek. The share of a vacant lot shall be one-half the rate of an improved lot.*** The Developer, after road construction has been completed, will pay a road maintenance fee based on the number of platted lots unsold. The minimum and initial annual fee is $300. During any period in which the Association undertakes primary responsibility for maintaining the

continuation of the access road through the adjoining Springbrook Subdivision, the Association shall collect from the property owners in Springbrook an equitable share of those costs. The contribution from each Springbrook property owner should be at least one third of the then prevailing per lot assessment in Steel Creek. The road maintenance fee shall be paid in advance for each year on the first day of January, and shall become overdue on the first day of March. Unpaid assessments shall bear interest at the legal rate, and shall be a lien upon the lot, which may be filed and enforced in the same manner as is provided by law for mortgages. In any litigation arising under these Covenants, the prevailing party shall recover from the other party all expenses incurred, including reasonable attorneys fees, calculated without regard to the amount in controversy.

[Doc. 5-1 at 2] (emphasis added).

The meaning of this covenant is plain from its text. A lot is subject to assessment when it is platted. The Plaintiffs' property was originally platted as four lots, but they chose to have it re-platted as sixteen. They sought the approval of the POA for the re-platting of the property, [Doc. 147-12 at 1], which was granted. [Id. at 2]. The Plaintiffs undertook this re-platting in order to obtain financing for their horse farm project. [Doc. 147-5 at 48]. Therefore, when the POA assessed the Plaintiffs based on their property being *platted* as sixteen lots, this assessment was correct. The Plaintiffs contend that the "only reasonable interpretation" of that covenant is that "the number of lots for assessment purposes increases only when subdivided lots are sold off." [Doc. 150 at 12 n.4]. The covenant, however, contains no language

whatsoever linking a lot's assessment to its date of sale.  It states that "The pro-ration shall be calculated according to **the number of platted lots** in Steel Creek."   The further subdivision of Plaintiffs' property occurred pursuant to a "Final Plat for the Ridges of Steel Creek" dated October 30, 2008.  [Doc. 147-12 at 3-5]. Therefore, the assessment by Defendant Steel Creek POA based on Plaintiffs having sixteen lots is valid and first became due January 1, 2009. ("The road maintenance fee shall be paid in advance for each year on the first day of January, and shall become overdue on the first day of March").   [Doc. 5-1 at 2].  This is precisely what the POA did. The Plaintiffs have presented no forecast of evidence that the amount of the assessment is incorrect.   In fact, the Plaintiffs assert in their Amended Complaint that the amount of the assessment is for one improved lot and fifteen unimproved lots. [Doc. 5 at 61].  For these reasons the Court will conclude as a matter of law that the assessments charged by the POA were proper and the Plaintiffs are not entitled to any refund thereof.

The POA's charges for interest, however, present a different issue.  It is undisputed that the POA charged the Plaintiffs interest on the assessments at the rate of 18% per year.   Again, the language of the covenant is clear.  It states that "unpaid assessments shall bear interest *at the legal rate.*"  [Doc. 5-1 at 2] (emphasis added).  The legal rate, however,

is eight percent, not eighteen. N.C. Gen. Stat. § 24-1. A property owners association is authorized to charge up to eighteen percent interest on assessments, but is limited by the rate that the association establishes. N.C. Gen. Stat. § 47F-3-115(b). Regarding Steel Creek, the restrictions limit the interest rate to the legal rate, which is eight percent. [Doc. 5-1 at 2]. Therefore, the Plaintiffs have been overcharged by the difference between eighteen percent and eight percent. Though no party has presented any calculation of this difference, the Court calculates it to be 10/18 of the amount of interest charged, or $4,607.61 ($8,293.70 x 10/18).[2] For these reasons the Court will conclude as a matter of law that the Plaintiffs are entitled to a refund of interest in that amount.

## II.    The North Carolina Debt Collection Act Claim

As stated previously, the Plaintiffs couched the claim regarding incorrect charges as a claim pursuant to North Carolina's Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq. (NCDCA). The elements of a claim for violation of the NCDCA consist of the three elements of a claim for Unfair and Deceptive Trade Practices, namely that: the defendant committed (1) an unfair or deceptive act, (2) in or affecting commerce, (3) proximately causing

---

[2] A simple mathematical calculation is not a finding of fact, but rather is an application of undisputed mathematical principles to the undisputed facts, applying the language of the covenants.

injury to them, plus three elements particular to the NCDCA, namely that: (4) the alleged obligation is a "debt," (5) the claimant owing the obligation is a "consumer," and (6) the party attempting to collect the obligation is a "debt collector." N.C. Gen. Stat. § 75–50; Reid v. Ayers, 138 N.C. App. 261, 265, 531 S.E.2d 231, 234 (2000) ("Article 2 only contains the specific requirements in the context of debt collection. After these are satisfied, a plaintiff's claim then must satisfy the more generalized requirements of all unfair or deceptive trade practice claims, which are contained in Article 1 (in particular, section 75-1.1).").

This presents the threshold issue of whether the property owners association is a "debt collector" within the meaning of the act, and whether a POA assessment constitutes "debt." These questions have been answered by the North Carolina Court of Appeals in Davis Lake Community Association, Inc. v. Feldmann, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000). In Davis Lake, like in the present matter, the alleged debt was a subdivision assessment and the alleged debt collector was the homeowners' association which was created and organized in part to collect lot assessments for use in maintaining the neighborhood's common areas. The Court of Appeals determined that because the assessment gives rise to the owner lawfully owing money to the association it constitutes a "debt" within

the act.  The Court went on to hold that a homeowners' association seeking to collect that debt constitutes a "debt collector."  Id. at 296, 530 S.E.2d at 868.  The Plaintiffs' problem in the present case, however, is whether they are "consumers" within the act.  In Davis Lake the Court held that the property owners were consumers within the act because they incurred the obligation at issue for family or household purposes (i.e., an assessment against their home).  Id. at 295, 530 S.E.2d at 868.  The Plaintiffs allege in conclusory fashion that they are consumers. [Doc. 5 at 56]. The undisputed forecasts of evidence, however, reflect that the sixteen lots that comprise the 81.09 acres at issue are intended for use as a horse farm.[3]  Plaintiffs sought agricultural exemptions for their land disturbing activity on the property based on their representation that it "is not my intent to develop this property for business, commercial or residential purposes." [Doc. 153-1].  As such, the Plaintiffs have failed to present a forecast of evidence from which a jury could determine that the assessment is for "family or household purposes." Davis Lake, 138 S.E.2d at 295, 530 S.E.2d at 868.

---

[3] It is undisputed that one of Plaintiffs' lots contains a vacation home and is assessed as a "developed lot," just as it was before Plaintiffs' re-subdivision of their property.  It is the assessment of the other lots that is at issue herein.

In addition, the Plaintiffs' forecast is wanting as to the element of an unfair and deceptive act. The POA's error consisted of confusing the "legal rate" of interest with a "lawful rate."[4] The eighteen percent rate of interest would have been allowed by law. N.C. Gen. Stat. § 47F-3-115(b). It was simply not authorized by the restrictive covenants for Steel Creek, which limited interest to the "legal rate". [Doc. 5-1 at 2]. A simple error, just like a simple breach of contract, cannot support a claim for unfair or deceptive trade practices.[5] Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 715 (4th Cir. 1983); Birtha v. Stonemor, NC, LLC, 220 N.C. 286, 298, 727 S.E.2d 1, 10 (2012); Jones v. Harrelson & Smith Contractors, LLC, 194 N.C. App. 203, 229, 670 S.E.2d 242, 259 (2008).

For these reasons the Plaintiffs are entitled to judgment as a matter of law for the refund of the $4,607.61 for the interest erroneously charged, and

---

[4] Plaintiffs assert that the POA also committed the unfair acts of: (1) imposing unwarranted retroactive assessment on their 16 lots, (2) wrongfully determining the assessments were past due, (3) wrongfully threatening to file liens on their lots, (4) improperly claiming entitlement to attorneys' fees, and (5) mailing excessive letters and failing to disclose that such letters were an attempt to collect a debt. [Doc. 150 at 18-22]. As addressed supra, the assessments were, in fact, due in accord with the covenants. The fact that they constituted a lien against the property and that the POA was authorized to recover attorneys fees are all supported by the covenants. The POA's error was in the calculation of the amount of interest due.

[5] Long before the assessments were made the lawyers had gotten involved in this dispute. [Doc. 5-8 and 5-9]. An error made by the lawyers in the back and forth of negotiations (particularly contentious negotiations) cannot be the basis for an unfair and deceptive trade practices claim.

the Defendant POA is entitled to judgment as a matter of law as to the

Plaintiffs' claims for the refund of any additional amounts and for any violation

of the NCDCA.[6]

### III. The Unjust Enrichment Claim

Plaintiffs next present a conditional claim.  They contend that if their

sixteen new lots are subject to valid assessments by the POA, then the POA

"has been unjustly enriched because it has contributed nothing toward the

construction and maintenance of the Scherers' roads."  [Doc. 150 at 24].

"'Unjust enrichment' is a legal term 'characterizing the result or effect

of a failure to make restitution of, or for, property or benefits received under

such circumstances as to give rise to a legal or equitable obligation to

account therefor.'" Carcano v. JBSS, LLC, 200 N.C. App. 162, 179, 684

S.E.2d 41, 54 (2009) (quoting Ivey v. Williams, 74 N.C. App. 532, 534, 328

S.E.2d 837, 838-39 (1985)).  To prevail on an unjust enrichment claim, a

plaintiff must prove: (1) that he conferred a benefit on the defendant, (2) such

benefit was not conferred officiously, that is, it was not conferred by an

interference in the affairs of the defendant in a manner that was not justified

---

[6] Plaintiffs also presented a claim for "conversion" of the funds that they paid under protest (Count VI). [Doc. 5 at 72-73].  This would more appropriately be seen as a breach of contract, see, pp. 19-20, infra.  Regardless of the label, the assessments were correct. The interest calculation was not.

in the circumstances, (3) the benefit was not gratuitous, (4) the benefit is measurable, and (5) the defendant consciously accepted the benefit. Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988).

The Plaintiffs argue that if they are liable for assessments on sixteen lots, then the POA should be obligated to reimburse them for the construction costs of the roads they built on their own property, as well as for the future maintenance of those roads.

First, it must be noted that Plaintiffs' argument is a non-sequitur. Just because the Plaintiffs must pay the assessments does not cause a benefit to flow to the POA from the new roads that the Plaintiffs built. The assessments are for the maintenance of the roads that were previously constructed by the developer for the use by all the property owners – including the Plaintiffs. They must traverse those pre-existing roads to arrive at their property. Accordingly, the Plaintiffs' use of the original development roads contributes to their wear and tear. Further, if Plaintiffs sell off their lots,[7] more traffic (including construction equipment) will flow over the Steel Creek roads, causing greater deterioration. Therefore, the assessments on Plaintiffs' sixteen lots will help fund the maintenance of the roads within Steel

---

[7] Presumably the Plaintiffs can sell the lots in accord with their re-subdivision plat since the POA approved the further subdivision of Plaintiffs' property. [Doc. 147-12 at 2].

13

Creek that Plaintiffs and any future grantees will use to access their property. The assessments reflect the Plaintiffs' responsibility for their pro rata share of the cost of providing them the benefit of the POA roads. It does not follow that the assessments cause the Plaintiffs' new roads to provide any benefit to the POA.

Unjust enrichment is based upon the conferral and acceptance of a benefit. Plaintiffs have presented no forecast of evidence that they have offered or provided any benefit to the POA, or to the other property owners. The roads are exclusively on Plaintiffs' property. Plaintiffs have gated their property so that no other property owners can use these new roads. No one can benefit from these new roads other than the Plaintiffs (and possibly their future grantees). As such, all five elements of an unjust enrichment claim are absent.

It should also be noted that the Plaintiffs' argument finds no support in the covenants that pertain to the roads and the assessments. The covenants require the Plaintiffs to pay assessments for sixteen lots because they hold sixteen platted lots within the subdivision. However, the covenants say nothing about the POA having to reimburse any property owner who constructs additional roads on his/her own property. In fact, the forecasts of evidence show that the Plaintiffs acknowledged that only they – and not the

POA - were responsible for the maintenance of the roads on their property.

When the Plaintiffs further subdivided their holdings and recorded the

additional subdivision plats they included on the plats the following language:

### CERTIFICATE OF OWNERSHIP AND DEDICATION

I **(WE) HEREBY CERTIFY THAT I AM (WE ARE) THE OWNER(S) OF THE PROPERTY** LOCATED WITHIN THE SUBDIVISION-REGULATION JURISDICTION OF TRANSYLVANIA COUNTY AS SHOWN AND DESCRIBED HEREON, AND THAT I (WE) HEREBY ADOPT THIS PLAN OF SUBDIVISION WITH MY (OUR) FREE CONSENT, AND DEDICATE ALL ROADS AND OTHER SITES AND EASEMENTS TO PUBLIC OR PRIVATE USE AS NOTED IN THE DISCLOSURE OF PRIVATE ROADWAYS, WHERE APPLICABLE.

11/12/08              s/William R. Scherer
  Date                    Owner(s)
                       s/Anne Scherer


                   * * * * * * * * * *


### CERTIFICATION OF PRIVATE ROADS

THE ROADS IN THIS SUBDIVISION ARE PRIVATE.  THE **PROPERTY OWNERS ARE RESPONSIBLE FOR MAINTAINING AND REPAIRING THE ROADS AS WELL AS PAYING THE COST THEREOF**.  MUNICIPAL AND OTHER GOVERNMENTAL SERVICES MAY BE RESTRICTED OR NOT BE FURNISED TO THE PROPERTY OWNERS USING PRIVATE ROADS FOR ACCESS.

[Doc. 147-12 at 4] (capitalization in original, bold emphasis added).  This is

confirmed by North Carolina's Planned Community Act which reads "Except

as otherwise provided in the declaration, each lot owner is responsible for the maintenance and repair of his lot and any improvements thereon." N.C. Gen. Stat. § 47F-3-107(a).

The Plaintiffs have neither conferred, nor offered, nor provided any benefit to the POA in their new roads. Therefore, the Defendants are entitled to judgment as a matter of law regarding the Plaintiffs' unjust enrichment claim.

## IV. The Quiet Enjoyment Claim

Plaintiffs contend that "[i]t is axiomatic that the owner of real property has the right to the quiet enjoyment of their [sic] land." [Doc. 5 at 71]. Further, they assert Defendant Steel Creek POA "interfered with Plaintiffs' quiet enjoyment of their property and breached the implied covenant of quiet enjoyment that is inherently a part of the POA." [Id.].

Plaintiffs face two insurmountable obstacles regarding this claim. First, an essential element of a quiet enjoyment claim is that the plaintiff has suffered actual or constructive eviction from his/her property. Fisher v. Virginia Electric and Power Co., 258 F.Supp.2d 445 (E.D. Va. 2003) (applying North Carolina law).

> Whether or not the covenants of warranty and quiet possession are equivalent under North Carolina law, the Supreme Court of North Carolina has held that both covenants are broken only by an actual or constructive eviction. … "It is the law in [North

Carolina] that a cause of action for breach of warranty of title to real estate does not arise until there has been an ouster or eviction of the grantee or grantees under a superior title."

Id., at 451 (quoting Shimer v. Traub, 244 N.C. 466, 467, 94 S.E.2d 363, 364 (1956)). The Plaintiffs herein have presented no forecast of evidence that they have ever been actually or constructively dispossessed of their land. In fact, they do not even allege that they have. Thus they have failed to satisfy an essential requirement of this claim.

Second, Plaintiffs have failed to allege or present a forecast of evidence that they purchased any of their property in the Steel Creek Development from Defendant Steel Creek POA. "A covenant of warranty is prospective. It is an agreement or assurance **by the grantor** of an estate **that the grantee** and his heirs and assigns shall enjoy it without interruption by virtue of a paramount title, or that they shall not by force of a paramount title be evicted from the land or deprived of its possession." Cover v. McAden, 183 N.C. 641, 644, 112 S.E. 817, 819 (1922) (emphasis added). The undisputed evidence shows that this claim must fail. The May 15, 2001, letter from then-Steel Creek POA President Mike Meany to Mr. Scherer states, in pertinent part, "[t]he Association has reviewed your plans for improvements on the parcels **you purchased from Line Runner** in the Steel Creek Development." [Doc. 5-4 (emphasis added)]. Accordingly, the

evidentiary forecast shows that Plaintiffs purchased their four Original Lots from Steel Creek's developer, Line Runner and not the POA. Hence, no claim for the breach of quiet enjoyment against the POA can survive.

Plaintiffs dismissively counter the Motion for Summary Judgment on this point by arguing that "it defies logic that a fee simple owner could not bring that claim [quiet enjoyment], when a tenant with a leasehold interest can," citing Bodine v Harris Village Property Owners Ass'n, Inc., 207 N.C. App. 52, 699 S.E.2d 129 (2010). [Doc. 161 at 19]. The claim in Bodine, however, was not one for quiet enjoyment. It was a claim challenging the validity of the restrictive covenants in question. While the North Carolina Court of Appeals correctly stated the law, that a grantor cannot include in his deed a restriction that effectively impairs the enjoyment of the property conveyed, Id. at 59, 699 S.E.2d at 135, that proposition has no application in the present case.

For these reasons, Defendant Steel Creek POA is entitled to judgment as a matter of law on Plaintiffs' quiet enjoyment claim.

## V.     The Interference with Contract Claim – Defendant Iooss

Plaintiffs' last claim for damages is against Defendant Paul Iooss, a member of the POA Board. Plaintiffs claim that Iooss interfered with their contract with the POA.

The elements of a tortious interference with contract claim are: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) in doing so the defendant acts without justification; and (5) this causes actual damage to the plaintiff. <u>United Labs., Inc. v. Kuykendall</u>, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988); <u>Warrender v. Gull Harbor Yacht Club, Inc.</u>, 228 N.C. App. 520, 536, 747 S.E.2d 592, 603 (2013).

Plaintiffs assert that the contract with which Iooss interfered was their contract with the POA arising from the restrictive covenants. [Doc. 5 at 75]. The North Carolina Supreme Court has held that a restrictive covenant creates "a species of incorporeal right." <u>Sheets v. Dillon</u>, 221 N.C. 426, 431, 20 S.E.2d 344, 347 (1942). The courts "will enforce its restrictions and prohibitions to the same extent that it would lend judicial sanction to any other valid contractual relationship." <u>Id.</u>  This is so because in the process of conveying title to the property, the grantor and grantee agree to observe the obligations imposed upon them with regard to the property so transferred. "This requirement is satisfied by contract implied from the acceptance of the deed containing the restrictions or properly incorporating the restrictions

therein by reference." Rodgerson v. Davis, 27 N.C. App. 173, 178, 218 S.E.2d 471, 465 (1975). The restrictions at issue call for the formation of the POA and grant it certain rights and responsibilities. The POA was formed, has accepted those responsibilities, and has acted pursuant thereto, thus making it a party to the agreement.

The elements of interference with contract require three players: the plaintiff, the party with whom the plaintiff contracted (i.e., the "third party"), and the alleged interfering party (i.e., the "outsider" to the contract). It is, therefore, axiomatic that a plaintiff may not maintain an action for tortious interference with contract against a party to the subject contract. Wagoner v. Elkin City Schools' Bd. of Educ., 113 N.C. App. 579, 587, 440 S.E.2d 119, 124 (1994). A corporate entity can only act through its agents and employees. Ergo, an action for interference with contract cannot generally be maintained against an agent or employee ("non-outsider") of a corporate party to the contract at issue. The Plaintiffs assert, and the Defendants do not contest, that the Defendant POA is "a registered Nonprofit Corporation with the State of North Carolina." [Doc. 5 at 7]. Plaintiffs allege that Iooss induced a breach by the POA by "using a position on the Board" [Doc. 5 at 76]. As such, Plaintiffs assert, and the Defendants do not contest, that Iooss

was a "non-outsider" to the contract at issue.[8]  This would appear to be the

end of the Plaintiffs' interference claim against Iooss.  There is, however, a

very narrow exception to the general rule that an agent, officer or employee

of a corporation cannot interfere with the corporation's contract.  "In order to

hold a 'non-outsider' liable for tortious interference with contract, then, a

plaintiff must establish that the defendant acted with legal malice, i.e., without

any legal justification for his or her actions."  Simpson v. Amylin

Pharmaceuticals, Inc., 977 F.Supp.2d 552, 556 (W.D.N.C. 2013) (citing

Bloch v. Paul Revere Life Ins. Co., 143 N.C. App. 228, 240, 547 S.E.2d 51,

60, disc. rev. denied, 354 N.C. 67, 553 S.E.2d 35 (2001)).

Whether an alleged action was done with any legal justification is

governed by the "Business Judgment Rule."  The Business Judgment Rule

"protects corporate directors from being judicially second-guessed when

they exercise reasonable care and creates a presumption that the directors

honestly believed they were acting in good faith and restricts judicial

oversight unless there is absolutely no rational basis for the directors'

decisions." HAJMM Co. v. House of Raeford Farms, 94 N.C. App. 1, 10, 379

S.E.2d 868, 873 (1989), modified, aff'd in part, and rev'd in part on other

---

[8] There are two instances that Plaintiffs assert constitute acts of interference by Iooss
before he joined the board.  These are address at pp. 24-25 infra.

grounds, 328 N.C. 578, 403 S.E.2d 483 (1991).  The Business Judgment Rule is no less applicable to non-profit corporations where, as here, board members are often acting on a volunteer basis.  It is not the province of the law to second guess the decisions of such board members, even if they were wrong, so long as those decisions were of some rationality.

Plaintiffs allege that Iooss interfered with the contract in the following ways: 1) denying their request to build the barn they desired, 2) imposing excessive fines and/or assessments, 3) charging a "usurious" interest rate on the assessments, 4) threatening liens for unpaid assessments, and 5) proposing amendments to the restrictive covenants. [Doc. 5 at 77].

The assessments and interest charges are addressed supra.  In imposing the assessments the POA was not in breach of the restrictions, but rather was acting in accord therewith.  Hence, Iooss did not induce any breach thereby.  Liens are a mechanism for enforcing the assessments in accord with the restrictions.  Therefore, employing such a mechanism would not have been a breach.  But Plaintiffs merely assert that the POA, through Iooss, *threatened* to take action by placing liens.  A threat, even a threat to breach, is not a breach.  The interest rate charged by the POA, as addressed supra, may have been incorrect, but it was not "usurious" as claimed by the

Plaintiffs.[9]  Moreover, for a non-lawyer to have confused a "lawful" interest rate with the "legal rate" does not constitute malice, is not devoid of a rational basis, and does not violate the Business Judgment Rule.  It was an error.  The Court will not second guess the decision maker, except to recognize that an error was made.  Proposing amendments to the restrictions also does not constitute a breach by the POA.  None of the proposed amendments about which the Plaintiffs complain were adopted.  Merely contemplating activity does not of itself constitute a breach.  Therefore, the Plaintiffs' interference with contract claims and forecasts of evidence each lack one or more of the basic elements of the tort.

The denial of the Plaintiffs' request to proceed with the construction of their barn is somewhat more complex.  Plaintiffs argue that Iooss, as a member of the POA Board, acted to deny such approval.  They assert that Iooss interfered with the contract because he "never explains in his motion [sic] how he adhered to Steel Creek's architectural review process or applied its 'harmony of design' criteria when making that determination." [Doc. 163 at 6].  Such "harmony of design" criteria are reasonable and enforceable.  Christopher Properties, Inc. v. Postell, 106 N.C. App. 180, 186, 415 S.E.2d 786, 790 (1992); Smith v. Butler Mtn. Estates Property Owners Assoc., 90

---

[9] Plaintiffs' hyperbolic use of such legal terms is unhelpful to the resolution of the issues.

N.C. App. 40, 367 S.E.2d 401 (1988), aff'd, 324 N.C. 80, 375 S.E.2d 905 (1989). In order for the Plaintiffs to prevail on a claim that Iooss interfered with their contract with the POA in the application of this covenant, Plaintiff must prove that the POA applied the standard incorrectly, *and* that Iooss had no rational basis for determining that the proposed structure was inconsistent with the existing structures in the development. The fact that Iooss "never explained" his reasons is irrelevant. In order to survive summary judgment on this claim it was incumbent on the Plaintiffs to present a forecast of evidence that the proposed structures were consistent in design with the existing structures and that Iooss's conclusion to the contrary was without rational basis. Otherwise the Business Judgment Rule protects Iooss from liability. In this regard, the Plaintiffs' forecast fails. They rely instead on the proposition that Iooss failed to justify his actions. Plaintiffs cite no authority for this proposition.

Plaintiffs also argue that Iooss's actions constituted interference because after becoming a member of the Board he sold his property and therefore was no longer eligible to remain on the Board. [Doc. 163 at 5]. Iooss's disposition of his property may well have been grounds for his removal from the Board. It is undisputed, however, that he was not removed. As such, his actions as a member of the Board are protected by the Business

Judgment Rule in the same manner as any other member.  Plaintiffs cite no authority for any contrary position.

Lastly, Plaintiffs argue that Iooss also interfered with the contract between them and the POA by certain actions in 2008 and 2009.  These are not alleged in the Amended Complaint as acts of interference, and thus are not before the Court as part of this claim.  These arguments, however, would also fail on their merits.  The first pertains to an amendment to the restrictions proposed by Iooss in 2008.  [Doc. 163 at 2].  A proposal to a board that is rejected by that board is not an act that has induced a breach by that board.  Hence, the essential third element of an interference claim, inducing a breach by the contracting party, is missing.  The second alleged incident pertains to a petition that Iooss submitted in 2009 to the *county planning department* (not the the POA or its Board). [Doc. 163 at 4].  Hence, this claim is completely unrelated to any contract between the Plaintiffs and the POA.  It should also be noted that in 2008 and 2009, Iooss was a property owner in Steel Creek and thus was a party to the same contract implied by the restrictions, just as were the Plaintiffs.  Hence, Iooss was not an "outsider" to the contract.  Wagoner, 113 N.C. App. at 587, 440 S.E.2d at 124.

For these reasons, the Plaintiffs claims for interference with contract against Defendant Iooss are without merit.  Plaintiffs' allegations and

forecast of evidence are insufficient to support such a claim. Therefore, the Motion for Summary Judgment of Defendant Iooss will be granted.

## VI. Plaintiffs' Request for Declaratory Relief

The Declaratory Judgment Act provides that in a case of actual controversy, district courts may declare the rights of interested parties. 28 U.S.C. § 2201(a). However, the district courts' authority to entertain declaratory judgment cases is discretionary. In fact, the Fourth Circuit has cautioned that district courts should only do so in the following circumstances: (1) "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998); Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) (district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions). After having examined the six issues the Plaintiffs seek to have determined, the Court will refrain from entertaining the Plaintiffs' request for declaratory relief in this matter. Several reasons underlie the Court's decision and each reason relates to one or more of the Plaintiffs' six specific request issues.

The Complaint lists six issues about which the Plaintiffs request this Court declare the rights of the parties. Those six issues are as follows:

a.      under the Protective Covenants and the laws of North Carolina, the POA's retroactive collection of road assessment fees and interest requires that the POA reimburse Plaintiffs for the funds expended in constructing and maintaining the roads up through the date of the retroactive assessment and obligating the POA to bear the burden of maintaining the roads in the future;

b.      the POA's attempt to assess road maintenance fees based on four improved and twelve unimproved lots is invalid and in violation of the Protective Covenants and the laws of the State of North Carolina;

c.      that Steel Creek is an equestrian community and the denial by the POA of Plaintiffs' submitted plans for improvements on their Property and interference with other lawful improvements of their property (such as constructing interior roads, drives and pastures) is invalid and in violation of the Protective Covenants and the laws of the State of North Carolina;

d.      the POA is not permitted to contemplate amendments to the Declarations, Bylaws, or Covenants that are contrary to the original intent of the community;

e.      non-lot owners of property in Steel Creek may not serve as an officer or director of the POA; and

f.      the POA violated the provisions of N.C[.] Stat. § 55A-16-02 by failing to provide Plaintiffs with a specific time and location in which Plaintiffs could inspect and copy records that were requested as permitted by N.C[.] Stat. § 55A-16-01.

[Doc. 5 at 60].

With regard to the Plaintiffs' first two requested issues, the Court has effectively resolved them in its analysis of, and its decisions regarding,

Plaintiffs' North Carolina Debt Collection Act claim and Plaintiffs' Unjust Enrichment claim. No further discussion regarding Plaintiffs' first two issues is therefore necessary.

Plaintiffs' third requested issue pertains directly to their seventh claim for relief – that Defendant Steel Creek POA is equitably estopped from rejecting their construction plans. Given that Defendant Steel Creek POA has conceded Plaintiffs' seventh claim for relief [Doc. 153 at 10], this third issue is moot.

Plaintiffs' fourth and fifth requested issues are not justiciable. The Declaratory Judgment Act grants district courts the authority to declare the rights of interested parties in cases involving an **_actual_** controversy. 28 U.S.C. § 2201(a) (emphasis added). With regard to the fourth requested issue, no forecast of evidence has been presented to show that Defendant Steel Creek POA is currently contemplating any amendments to the Declaration, Bylaws, or Covenants. With regard to the fifth requested issue, the undisputed facts show that "no non-lot owners of property in Steel Creek" currently serve as officers or directors of Defendant Steel Creek POA. Accordingly, no actual controversy exists affecting Plaintiffs' fourth and fifth request issues.

Finally, by Order entered May 27, 2014 [Doc. 60], the Court resolved against the Plaintiffs their request made in the sixth issue. For all of these reasons, the Court will not exercise its discretion to hear Plaintiffs' declaratory judgment claim in this case.

## VII.   Attorneys' Fees

The Plaintiffs and the Defendant POA seek recovery of their attorneys' fees. Both sides cite to the provision in the restrictions that reads, "In any litigation arising under these Covenants, the prevailing party shall recover from the other party all expenses incurred, including reasonable attorneys['] fees, calculated without regard to the amount in controversy." [Doc. 5-1 at 2]. In this matter, the POA has prevailed on most issues, but the Plaintiffs have prevailed with regard to the issue of the interest charges. For this reason the Court, in its discretion, will decline to award attorneys' fees to either party.

Both parties also sought attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1. Since the POA prevailed on the Chapter 75 claim, it is the party who may seek fees. That section, however, reads in pertinent part that a prevailing defendant may be awarded fees

upon a finding by the presiding judge that:

. . .

> (2) The party instituting the action knew, or should
> have known, the action was frivolous and malicious.

N.C. Gen. Stat. § 75-16.1. On the facts of this case the Court declines to make such findings here.[10] Accordingly, the Court will decline to award fees to the POA pursuant to this provision.

## ORDER

**IT IS, THEREFORE, ORDERED** as follows:

(1) Defendant Paul Iooss' Motion for Summary Judgment [Doc. 146] is hereby **GRANTED**;

(2) Defendant Steel Creek Property Owners Association's Motion for Summary Judgment [Doc. 152] is hereby **GRANTED in part and DENIED in part** in that summary judgment is allowed in favor of said Defendant on all issues except for the award of the refund of interest in the amount of $4,607.61;

---

[10] The gist of this case is a question of whether the POA's charging the Plaintiffs $15,400.00 in assessments was supported by the covenants. This simple dispute devolved into an action seeking in excess of $1 million as embodied in a Complaint consisting of 78 pages plus numerous attachments. This case gives new meaning to the term "making a federal case out of it." It also gives rise to the question of whether the purpose in filing this action, and the manner of prosecuting it, was intimidation rather than to seek a resolution of any legitimate legal issues. The Plaintiffs obliquely argue that the POA and some of its board members are busy-bodies and the Defendants obliquely assert that the Plaintiffs harbor an over-blown sense of entitlement. The Court expresses no opinion on such points. Even if such is true, however, it does not warrant the degree of petulance and over-lawyering that has permeated this case.

(3) Plaintiff's Motion for Summary Judgment [Doc. 150] is **GRANTED in part and DENIED in part** in that the Plaintiffs are awarded summary judgment against the Defendant POA on the claim for the refund of interest in the amount of 4,607.61. Except as so granted, the Plaintiffs' Motion for Summary Judgment is denied; and

(4) The Plaintiffs' Motion to Appoint Receiver [Doc. 154], and the Plaintiff's Motion for Leave to file supplemental briefing [Doc. 181], are both **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Court will not exercise its discretion under 28 U.S.C. § 2201(a), and the Court thus **ABSTAINS** from entertaining the Plaintiffs' request for declaratory relief in this matter.

**FINALLY, IT IS ORDERED** that, in its discretion and pursuant to N.C. Gen. Stat. § 75-16.1, the Court declines to award a reasonable attorney's fee to any party. The costs of this action shall be taxed against the Plaintiffs.

**IT IS SO ORDERED.**

Signed: March 30, 2016

Martin Reidinger
United States District Judge